UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMMANUEL PALMER,

    Plaintiff,

      v.

RYAN ALLEN, et al.,

    Defendants.

_____/

Case No. 14-cv-12247

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
DAVID R. GRAND

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [73]**

**I. INTRODUCTION**

On June 6, 2014, Emmanuel Palmer ("Palmer" or "Plaintiff") filed a
Complaint against the Ecorse Police Department, Officers Ryan Allen ("Allen")
and Christoval Trevino ("Trevino"), Oakwood Hospital, and John Does 1 and 2.
Dkt. No. 1, p. 1 (Pg. ID No. 1). Defendants Oakwood Hospital and John Does 1
and 2 were dismissed by the Court on August 13, 2014. Dkt. No. 8, pp. 2–3 (Pg. ID
No. 40–41). On November 23, 2015, Palmer submitted an Amended Complaint
alleging 13 violations of federal and state law. *See* Dkt. No. 53, pp. 12–28 (Pg. ID
No. 283–99).

Presently before the Court is Defendants' Motion for Summary Judgment [73], submitted April 28, 2016. Although the Court specifically extended Palmer's response period in its June 7th order, Dkt. No. 88, Palmer did not respond to the Motion and the period for response has passed.

Upon review of the briefing, the Court concludes that oral argument will not aid in the resolution of the instant motion. Accordingly, the Court will resolve Defendant's present motion on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons discussed herein, the Court will **GRANT** in part and **DENY** in part Defendants' Motion for Summary Judgment [73].

## II. BACKGROUND

Around 2:00 a.m. on the morning of August 11, 2012, Palmer was riding back from a Detroit club as a passenger in a van driven by Quentez McKinney ("McKinney") in the City of Ecorse, Michigan. Dkt. No. 53, p. 3 (Pg. ID No. 274). The vehicle was pulled over by Ecorse Police Officers Ryan Allen and Kevin Barkman for driving without headlights. Dkt. No. 73, p. 13 (Pg. ID No. 539). Allen approached the driver-side of the van and asked for McKinney's driver's license. *Id*. Palmer began filming the encounter on his cellphone. *Id*.; Dkt. No. 53, p. 3 (Pg. ID No. 274). Allen asked McKinney to step out of the vehicle, after it was found that McKinney was driving with a suspended license and had several outstanding

-2-

warrants for his arrest. Dkt. No. 73, p. 13 (Pg. ID No. 539). McKinney was arrested and placed in the back of the police vehicle. *Id*.

Meanwhile, Barkman remained on the passenger side of the vehicle, next to Palmer. *Id*. After McKinney was arrested, Palmer asked to walk nine blocks to his home, but was told that he was being detained for a failure to wear his seatbelt. *Id*.; Dkt. No. 53, p. 4 (Pg. ID No. 275). Palmer maintains that he had only removed his seatbelt because he intended to walk home after McKinney's arrest. Dkt. No. 73, p. 14 (Pg. ID No. 540). Allen asked Palmer to provide his name, but Palmer refused to answer, asking again if he was being detained. *See id*.

At this point, Allen says to Palmer, "We're not playing this fucking game— get out of the vehicle nice and easy." *Id*. At this point, Palmer claims that Allen reached into the van to open the door, forcibly grabbed him by his neck and shirt, pulled him from the vehicle, and slammed him into the side of the vehicle. Dkt. No. 53, p. 4 (Pg. ID No. 275). The video from Palmer's cellphone does not support this accusation, but instead shows Palmer exiting the vehicle without any noticeable physical altercation. *See* Dkt. No. 73-4 (Pg. ID No. 603–04). Palmer asks what the problem is and an officer informs that there was open container of alcohol in the vehicle. *Id*. The video does not show Palmer denying that there was alcohol in the vehicle, instead stating that "it's not [his] booze." *See id*. Allen responds by stating, "Enough of this fucking stupid game. Relax man, alright—you

have open alcohol." *Id*. At no time in the video was there footage or sounds that support Palmer's accusation that he was grabbed by his neck and shirt, or slammed into the side of the vehicle.

Palmer then alleges that once Allen realized that the encounter was being recorded on his cellphone, Allen stated "You fucking recording this?" and pressed the stop recording button. The video does not support Palmer's allegation of Allen's statement, but it does appear that the cellphone stopped recording during a search of Palmer. At this point, Palmer alleges that, while in Barkman's presence, Allen grabbed Palmer by the neck, making it difficult for him to breathe. Allen then handcuffed Palmer and walked him to the back of the police car, where Palmer was made to remove his shoes. Removal of his shoes allegedly caused Palmer pain due to gout. Palmer was then placed in the back of the police car with McKinney for transport to the Ecorse Police Department. A subsequent search of Michigan Law Enforcement Information Network (LEIN) revealed that Palmer had four outstanding warrants for his arrest. Dkt. No. 73, p. 15 (Pg. ID No. 541).

At the Ecorse Police Department, Palmer alleges that Allen told him that he was being charged with "weed, liquor, and obstructing me." Dkt. No. 53, p. 6 (Pg. ID No. 277). Palmer signed a forfeiture paper for his cellphone, claiming that he felt under duress at the time. *Id*. Plaintiff was then placed in an individual holding cell. *Id*.

-4-

Palmer fell asleep in his cell and awoke to flooding in his cell caused by a backed-up sewer drain. *Id*. After waiting for a period of time, Palmer was let out of his cell by Trevino. *Id*. 6–7. After noticing that Palmer was limping due to inflammation from gout, Trevino allegedly called Palmer a "pussy motherfucker" and slapped him in the face, without provocation. *Id*. at 7. Palmer claims that Trevino then grabbed him by the shirt, ripping it, pushed him to the floor, and proceeded to stomp, kick and choke him while Palmer screamed for help. *Id*. at 8. Two other inmates, McKinney and Michael Crumby, allegedly witnessed the beating and yelled for Trevino to stop hurting Palmer. *Id*.

Palmer alleges that Trevino then used a Taser on him approximately ten to twenty times after saying, "Nigger motherfucker, I got something for you nigger motherfucker!" *Id*.; Dkt. No. 73-3, p. 21 (Pg. ID No. 591). Palmer claims that he began crawling to a nearby cell after drifting in and out of consciousness. *Id*. He claims that Trevino then said, "That's the wrong mother fucking cell! That's the wrong cell!" and used a Taser on him approximately five more times, as Palmer pleaded for him to stop. *Id*. at 8–9; Dkt. No. 73-3, p. 21 (Pg. ID No. 591).

According to Palmer, paramedics arrived about one hour after Trevino's use of force. *Id*. at 9. Palmer claims that he told the paramedic about the incident and his injuries, but that she left after checking his vital signs, without providing medical treatment or medication. *Id*. at 9–10.

At some time later, Allen allegedly came to Palmer's cell and directed him to remove the tissue paper that was covering the cell's surveillance camera. *Id.* at 10. After Allen removed the tissue from the camera, Palmer claims Allen said "Give me that fucking [bed] sheet! You get nothing!" and stated that he was glad Trevino "fucked [Palmer] up." *Id.* Allen allegedly told Palmer that, "I guess what I said did get around (you) fucking dumb ass" and laughed at Palmer. *Id.*

Although there are multiple cameras positioned inside the Ecorse jail, Defendants allege that all of the surveillance video from the period of Palmer's detention was corrupted and nontransferable because of a catastrophic failure of the recording system in early 2013. Dkt. No. 73, p. 16 (Pg. ID No. 543).

Palmer was arraigned on or about August 13, 2012 in 25th District Court in Ecorse, Michigan on charges including open intoxicants in a motor vehicle, possession of marijuana, and resisting and obstruction. Dkt. No. 53, p. 11 (Pg. ID No. 282). The charges were dismissed on October 3, 2012, after Ecorse police officials failed to produce the Palmer's cell phone after being ordered to do so by the judge on three occasions. *Id.* Palmer requested his phone back, but was told it was forfeited to the Wayne County Prosecutor's Office. *Id.* It was later returned during this litigation.

In September and October 2012, Palmer filed two citizen complaints with the City of Ecorse police regarding Trevino. *Id*. Palmer claims that he never received a response. *Id*. at 12.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### IV. DISCUSSION

In his Amended Complaint, Palmer brings 13 claims. In Count I, Palmer alleges that Defendant Officers violated his constitutional right to be free from

unreasonable and excessive physical force. Dkt. No. 53, p. 12 (Pg. ID No.283). In Count II, Palmer claims that Defendant City of Ecorse violated his right to be free from "illegal arrest and/or illegal or unreasonable search and/or seizure." *Id*. at 12–13. In Count III, Palmer alleges that Defendant Officers violated his rights under the First and Fourth Amendments to record video of law enforcement officers and be protected from unreasonable searches and seizures. *Id*. at 13–14. In Count IV, Palmer brings a failure to intervene claim against "Defendant Officers." *Id*. 14–15. In Count V, Palmer alleges that Defendants destroyed materially-favorable evidence in bad faith, including the jail surveillance and cellphone videos from his arrest and detention. *Id*. at 15–17. In Count VI, Palmer claims that Defendant Officers subjected him to malicious prosecution. *Id*. at 17–18. In Count VII, Palmer brings a state law claim for Intentional Infliction of Emotional Distress against Defendant Officers for "acts and/or omissions and/or conduct" that was "extreme and outrageous." *Id*. at 18–19. In Counts VIII and IX, Palmer brings both federal and state civil conspiracy charges against Defendant Officers. *Id*. at 19–21. In Count X, Palmer alleges that Defendant Officers are guilty of gross negligence. *Id*. at 21–23. In Count XI, Palmer claims that Defendant Officers assaulted and battered him. *Id*. at 23–24. In Count XII, Palmer alleges that Defendant Officers engaged in ethnic intimidation, in violation of Michigan Compiled Laws

§ 750.147(b). *Id.* at 24–26. In Count XIII, Palmer asserts that Defendant Officers are guilty of abuse of process. *Id.* at 26–28.

In the Motion for Summary Judgment, Defendants seek to have the Court dismiss all claims against the City of Ecorse and Allen, as well as specifically addressed claims against Trevino. Dkt. No. 73, p. 37 (Pg. ID No. 563). A detailed analysis is below.

### 1.  Count I: Excessive Force

First, Palmer brings a claim under 42 U.S.C. § 1983, alleging that Allen and Trevino violated his Fourth Amendment right to be free of excessive force. Dkt. No. 53, p. 12 (Pg. ID No. 283). Defendants argue in their Motion for Summary Judgment that Palmer cannot demonstrate a prima facie case for excessive force as to Allen, but do not make any arguments as to Trevino. Dkt. No. 73, pp. 23–24 (Pg. ID No. 549–50).

The Court applies the Fourth Amendment's unreasonable seizure jurisprudence when analyzing excessive force claims. *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009). "In determining whether excessive force was used, courts must ask whether the officer's actions, in light of the totality of the circumstances, were objectively reasonable." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). Under this fact-specific assessment, three considerations are

relevant in determining the reasonableness of force used. *See Harris v. City of Circleville*, 583 F.3d 356, 365 (6th Cir. 2009). First, the Court reviews the severity of the crime at issue. *Id*. Second, the Court asks whether the suspect posed an immediate threat to the safety of the police officers or others. *Id*. And third, the Court asks whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Id*. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

In assessing the reasonableness of Allen's actions, the Court analyzes the events alleged by Palmer in segments. *See Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002). There are three segments: (1) the removal of Palmer from the vehicle by allegedly grabbing his neck and shirt, then slamming Palmer onto the vehicle; (2) the alleged choke of Palmer after the cellphone camera was turned off; and (3) the removal of Palmer's shoes during his arrest. *See* Dkt. No. 53, pp. 4–5 (Pg. ID No. 275–76). Considering the relevant factors, with respect to one of these three segments, Palmer's version of the events supports a holding that Allen violated Palmer's Fourth Amendment right to be free from excessive force.

Under Palmer's version of the facts, in the first segment, Allen "reached into the vehicle, grabbed the door handle and opened the passenger door." *Id*. at 4. Allen then allegedly "grabbed [Palmer] by his neck and shirt, pulling him from the

vehicle and slammed him onto the side of the vehicle." *Id*. With respect to this segment, as mentioned earlier, the cellphone video Palmer took of the incident establishes that some of these allegations—that Allen grabbed or slammed Palmer onto the vehicle—are verifiably inaccurate. *See* Dkt. No. 73-4. Accordingly, this segment is limited solely to Allen's reaching into the vehicle to open the passenger door, which does not constitute a force being applied to Palmer.

In the second segment, after Allen realized Palmer's cellphone was recording the events, Allen allegedly "grabbed [Palmer] by his neck using extreme force and pressure such that [Palmer] had difficulty breathing," and walked Palmer to the back of the police car with his hands around his neck while Palmer was handcuffed. *Id*. at 5.

In the third and final segment, after being walked to the back of the police car, Allen told Palmer to remove his shoes, despite the fact that Palmer told him that his feet were extremely sensitive because of gout and it hurt to stand on cement without his shoes. *Id*. at 5.

We conclude that the *Graham* factors weigh against Allen as to the second segment. Palmer was accused of possessing marijuana and an open intoxicant, obstructing justice, and having four outstanding warrants for his arrest in the Cities of Ecorse, Harper Woods, and Southgate. Dkt. No. 73-2, p. 5 (Pg. ID No. 570). Relatively speaking, none of these crimes stand out as being particularly serious or

-11-

involving violence. There is no evidence that Palmer presented a threat or imminent danger to the officers, and Palmer claims that he was handcuffed during at least part of the alleged choking in the second segment. Additionally, under Palmer's version of the facts, he did not actively resist during this portion of the stop. Accordingly, these facts taken in a light most favorable to Palmer are sufficient to establish a violation of his constitutional rights under a Fourth Amendment analysis.

Nevertheless, it is to be noted that neither the first segment, nor the third segment illustrates conduct by Allen that could be considered objectively unreasonable. Since McKinney had already been arrested for driving on a suspended license and having multiple outstanding warrants, it was lawful for Allen to order Palmer out of the vehicle to conduct an inventory search of McKinney's vehicle prior to impoundment. *See United States v. Bah*, 794 F.3d 617, 627 (6th Cir.), *cert. denied sub nom. Harvey v. United States*, 136 S. Ct. 561 (2015) (finding that an officer's request that the passenger exit the vehicle was not unreasonable where the officer was to conduct an inventory search prior to impoundment).

Furthermore, the Court is unaware of any case where an arrestee being told to remove his shoes for search incident to arrest constitutes excessive force. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354–55 (2001) (noting that an arrest

-12-

for a seatbelt violation, requiring the plaintiff to remove her shoes, jewelry, and glasses, was no more harmful to her privacy or physical interests than the normal custodial arrest); *United States v. Nevitt*, 409 F. Supp. 1075, 1078 (W.D. Mich.), *aff'd*, 549 F.2d 803 (6th Cir. 1976) ("Seizure of such items as shoes is permissible as incident to a valid custodial arrest"). Palmer has not pleaded that his shoes were medically approved or issued by medical professionals, or even specifed the amount of time that he was forced to stand barefoot prior to being seated in the police vehicle. *Cf. Dale v. Slyhuis*, 313 F. App'x 917, 918 (8th Cir. 2009) (finding no constitutional violation where plaintiff was temporary denied permission to remove insoles from his shoes, causing him discomfort, and his physician had not prescribed the inserts be removed). Palmer's temporary discomfort because his shoes were removed for search incident to arrest does not establish that Allen's action, in having Palmer remove his shoes, was objectively unreasonable.

Accordingly, the Court will not dismiss Palmer's excessive force claim as to Trevino, or as to Allen for the specific allegation that Allen choked Palmer after the cellphone video ended and prior to being placed in the back of the police car.

### 2. Count II: Illegal Search and Seizure

Next, in his second claim, Palmer brings a claim against the City of Ecorse for violating his "rights to be free from illegal arrest and/or illegal or unreasonable search and/or seizure, as secured by the Fourth and Fourteenth Amendments to the

United States Constitution." Dkt. No. 53, pp. 12–13 (Pg. ID No. 283–84). Defendants argue that Count II must be dismissed because Palmer "articulates no theory as to how or why the City should be held liable for his alleged illegal arrest, search, and seizure." Dkt. No. 73, p. 18 (Pg. ID No. 544).

Since the City of Ecorse is the only Defendant named in Count II, it appears that Palmer seeks to hold the City liable for these constitutional violations under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). "Municipalities are not vicariously liable for the actions of their employees." *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 260 (6th Cir. 2015), *cert. denied*, No. 15-1090, 2016 WL 776505 (U.S. May 16, 2016). Instead, a municipality may only be found responsible for § 1983 violations, and held liable for damages, if the plaintiff demonstrates that the constitutional harm suffered was a result of the municipality's policy or custom. *Id.* "To succeed on a claim that a municipality has a policy or practice of constitutional violations, a plaintiff *must identify an unconstitutional policy* and must show that the policy led to a constitutional deprivation." *Zucker v. City of Farmington Hills*, No. 15-1202, 2016 WL 1019041, at *15 (6th Cir. Mar. 14, 2016) (emphasis added); *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("[A] municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.' " (second alteration in original) (quoting *Monell*, 436 U.S. at 694)).

-14-

In the present case, Palmer has not plead any City of Ecorse policy or practice, specific or otherwise, that led to a deprivation of his Fourth Amendment rights to be free of illegal search or seizure. Palmer has pled that he heard rumors that Trevino "disrespects people," is a "troublemaker," and "has many misconducts on his record." Dkt. No. 73-3, pp. 5, 28 (Pg. ID No. 575, 598). Additionally, Palmer "assume[s] that [the City] has a policy or custom of letting their police officers do all types of—of police misconduct." *Id*. at 29. None of Palmer's allegations, which focus on misconduct by Trevino, address unlawful search or seizure, nor do they suggest that the City of Ecorse knew or should have known that Allen would engage in such acts.[1]

The Court does not find that Palmer's assumption that a custom must exist, without any substantiating evidence, "show[s] a direct causal link between the custom and the constitutional deprivation." *See Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996) ("The evidence must show that the need to act is so obvious that the [municipality's]

---

[1] Palmer's Complaint does not allege any conduct by Trevino that could be interpreted as unlawful search and/or seizure. Instead, the conduct alleged to have been taken by Trevino—slapping, kicking, stomping, choking, uttering racial epithets, and use of a Taser—is interpretable under Palmer's claims of excessive force, intentional infliction of emotional distress, assault and battery, and ethnic intimidation.

-15-

'conscious' decision not to act can be said to amount to a 'policy' of deliberate indifference to [the plaintiff's] constitutional rights."). Palmer has not offered any records, reports, or previous complaints as evidence that the Ecorse police had a custom of conducting illegal searches, seizures, or arrests.

Palmer additionally asserts, albeit in support of his conspiracy claims, that the City of Ecorse inadequately investigated the alleged incidents because "[n]o detective ever came back and called [him] or asked him questions." Dkt. No. 73-3, p. 29 (Pg. ID No. 599). An inadequate investigation into misconduct is not, on its own, sufficient to show deliberate indifference. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005). A plaintiff must also show "that the flaws in this particular investigation were representative of (1) a clear and persistent pattern of illegal activity, (2) which the [municipality] knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the [municipality's] custom was the cause of the [constitutional violation]." *Id.*

Because Palmer failed to offer any evidence in support of his *Monell* claim that the City of Ecorse had a custom or policy of illegal searches, seizures, and/or arrests, the Court will dismiss Palmer's unlawful seizure claim.

### 3. Count III: First and Fourth Amendment Violation

In his third claim, Palmer brings a claim against Allen and Trevino for violating his "right to be free [sic] video record law enforcement officials and the

right to be protected from unreasonable searches and seizures guaranteed by the I and IV amendments to the US Constitution." Dkt. No. 53, p. 13 (Pg. ID No. 284).

## A. Qualified Immunity

Government officials performing discretionary actions are generally provided qualified immunity and are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The Court undertakes a two-step inquiry to determine if qualified immunity applies to the present dispute. First, the Court considers whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right." *Saucier v. Katz,* 533 U.S. 194, 121 (2001). And second, the Court must determine whether the alleged violation was of "clearly established constitutional rights of which a reasonable person would have known." *Dickerson v. McClellan,* 101 F.3d 1151, 1158 (6th Cir. 1996) (internal quotation omitted).

## B. First Amendment Right to Film Law Enforcement

"[T]he First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978). The protections of the First

-17-

Amendment include "news gathering," *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972), and "the free discussion of governmental affairs." *Mills v. State of Ala.*, 384 U.S. 214, 218 (1966). Yet the First Amendment's protections are not absolute. *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984) ("Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions.").

The Court analyzes First Amendment retaliation claims under a burden-shifting framework. *Wenk v. O'Reilly*, 783 F.3d 585, 593 (6th Cir. 2015), *cert. denied sub nom. Schott v. Wenk*, 136 S. Ct. 792 (2016). "A plaintiff must first make a prima facie case of retaliation," which has three elements: "(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; [and] (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct." *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir.2012) (internal quotation marks omitted). "Although the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting—whether activity is 'protected' or an action is 'adverse' will depend on context." *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999).

-18-

Thus, to qualify as First Amendment retaliation, for which qualified immunity does not apply, the right to secretly film law enforcement officers at a traffic stop must be both constitutionally protected conduct and a right so clearly established that a reasonable person would know of it. The Court is unable to say that such a right was clearly established in Michigan as of August 2012.

"The Supreme Court and Sixth Circuit have not ruled specifically on the right of the public openly to film police officers and their actions in a public setting," although "[o]ther circuit courts have . . . ruled such a right exists." *Crawford v. Geiger* (Crawford II), 131 F. Supp. 3d 703, 714 (N.D. Ohio 2015). Additionally, while other jurisdictions indicate there is a right to film law enforcement in certain contexts, this right is not uniform or clearly established in the context of traffic stops or surreptitious filming. *Williams v. Boggs*, No. CIV.A. 6:13-65-DCR, 2014 WL 585373, at *5 (E.D. Ky. Feb. 13, 2014) (noting the lack of clarity as applied to traffic stops); *Crawford v. Geiger* (Crawford I), 996 F. Supp. 2d 603, 615 n.9 (N.D. Ohio 2014) (noting the ruling's right to openly film police officers carrying out their duties did not apply to those who recorded police officers surreptitiously). *Compare Kelly v. Borough of Carlisle*, 622 F.3d 248, 263 (3d Cir. 2010) ("For these reasons, we hold that the right to videotape police officers during traffic stops was not clearly established and Officer Rogers was entitled to qualified immunity on Kelly's First Amendment claim."); *with Gericke*

-19-

*v. Begin*, 753 F.3d 1, 3 (1st Cir. 2014) (holding that there is a First Amendment right to openly film police officers at a traffic stop).

Based on the legal ambiguity that surrounds a right to surreptitiously film police officers at a traffic stop, this Court cannot say that this right was clearly established in this Circuit at the time of the incident. Such a determination is consistent with other district courts within this Circuit. *See Williams v. City Of Paris*, No. 5: 15-108-DCR, 2016 WL 2354230, at *4 (E.D. Ky. May 4, 2016) (determining that defendant officer was entitled to qualified immunity because the right to openly film police was not clearly established in July 2014); *Crawford v. Geiger* (Crawford II), 131 F. Supp. 3d 703, 715 (N.D. Ohio 2015), *appeal docketed*, No. 15-4181 (6th Cir. Oct. 29, 2015) ("On further consideration in connection with the instant motions, however, I believe the right openly to film police carrying out their duties is not so clear cut that it is proper in *this* case to withhold qualified immunity as to the First Amendment claim."); *Williams v. Boggs*, No. CIV.A. 6:13-65-DCR, 2014 WL 585373, at *1 (E.D. Ky. Feb. 13, 2014) (finding that the right to record a confrontation with law enforcement was not clearly established in January 2013, and dismissing claim).

Accordingly, as the Court has not found the right to secretly film police officers at a traffic stop was so clearly established in August 2012, such that it would "put a reasonably competent officer on 'fair notice' that seizing a camera

-20-

. . . would violate the First Amendment," *Kelly*, 622 F.3d at 262, Defendant Officers[2] are entitled to qualified immunity as to Palmer's claim for seizing his phone. The Court dismisses Palmer's First Amendment claim.

### C. Unreasonable Search and Seizure

Palmer's allegations as to Trevino do not give rise to an unreasonable search and seizure claim, so the Court will accordingly analyze Palmer's claim solely as it applies to Allen.

The Fourth Amendment prohibits unreasonable searches and seizures. *Graves v. Mahoning Cty.*, No. 15-3175, 2016 WL 2753907, at *2 (6th Cir. May 12, 2016). "In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

Notably absent within Palmer's Count III Fourth Amendment claim is any mention of probable cause. *See Graves*, 2016 WL 2753907, at *3 ("Without facts going to this "crucial question," the plaintiffs cannot state a Fourth Amendment § 1983 claim against anyone . . . because they have not alleged a violation of their

---

[2] There are no factual allegations that Trevino seized Palmer's phone, but as the Amended Complaint names both of them in the First Amendment claim, the Court has included Trevino in this finding.

rights."). However, despite the absence of allegations as to probable cause in Count III, the Court will proceed and analyze the facts in the light most favorable to Palmer, to determine whether there was sufficient probable cause for his seizure, search, and arrest following the traffic stop.

Allen and his partner pulled over the vehicle driven by McKinney, in which Palmer was a passenger, at 2:50 a.m. on August 11, 2012, for driving without its headlights activated. Dkt. No. 73-2, p. 4 (Pg. ID No. 569). Driving at night without headlights activated provides sufficient probable cause to perform a traffic stop for violation of the Michigan Vehicle Code. *See United States v. Gaskin*, 587 F. App'x 290, 295 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 1579 (2015) (finding that an officer's reasonable belief that an individual was driving without headlights after sunset, a violation of the Ohio Traffic Code, satisfied probable cause for traffic stop); MICH. COMP. LAWS § 257.684(a) ("Every vehicle upon a highway within this state at any time from a half hour after sunset to a half hour before sunrise . . . shall display lighted lamps and illuminating devices"). Since Palmer has not claimed the headlights were activated, this issue is not in dispute and the officers had probable cause to pull over McKinney and Palmer.

Also not in dispute is the fact that McKinney was driving without a valid license. Dkt. No. 53, p. 4 (Pg. ID No. 275). Accordingly, the officers acted within their discretion to tow and impound the vehicle because the driver had a suspended

license and three outstanding warrants, and Palmer does not argue that he had a valid license or permission to take possession of the vehicle. Dkt. No. 73, p. 2 (Pg. ID No. 569); *see also United States v. Hockenberry*, 730 F.3d 645, 660 (6th Cir. 2013) (officers had authority to impound vehicle where the drier was operating under a suspended license and passengers either did not have valid licenses or had active warrants for arrest).

Where officers have probable cause to stop a vehicle and make a reasonable decision to impound the vehicle, the Sixth Circuit has found that police may conduct an investigatory search of the vehicle. *Hockenberry*, 730 F.3d at 660; *United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012) ("It is settled law that the police may conduct an inventory search of an automobile that is being impounded without running afoul of the Fourth Amendment."). Palmer could not remain in a vehicle that was to be lawfully impounded, thus it was necessary for him to step out. *See United States v. Bah*, 794 F.3d 617, 627 (6th Cir.), *cert. denied sub nom. Harvey v. United States*, 136 S. Ct. 561 (2015) (noting that "having the vehicle towed" "would necessarily require that [the passenger] exit the vehicle").

Allen provided Palmer with two reasons for his arrest after Palmer exited the vehicle: Palmer was not wearing his seatbelt, which Palmer disputes, and there was an open alcohol container in plain view in the vehicle's center console, which Palmer has not disputed. Dkt. No. 73-4. Although Palmer claims in the video that

the alcohol was not his, he does not dispute that there was open alcohol next to him in the vehicle. *Id*. Michigan law makes it illegal for both drivers and passengers to transport open alcohol in the passenger area of a vehicle. MICH. COMP. LAWS § 257.624a ("Except as provided in subsections (2) and (5), a person who is an operator or occupant shall not transport or possess alcoholic liquor in a container that is open or uncapped or upon which the seal is broken within the passenger area of a vehicle . . . ."); *see also United States v. Copeland*, 321 F.3d 582, 591 (6th Cir. 2003) (affirming reasonability of a traffic stop for parking violations, wherein both the driver and passenger were arrested for transporting open intoxicants).

Thus, Allen's arrest and seizure of Palmer was not unreasonable under the circumstances, which provided probable cause to arrest him for open intoxicants in a vehicle. Further support for the arrest came from the undisputed evidence that Palmer had four outstanding warrants for his arrest in various Michigan cities, and the disputed evidence that Palmer was in possession of marijuana. Dkt. No. 73-2, p. 5 (Pg. ID No. 570). Search of Palmer's person was also reasonable at this point, as a search incident to arrest. *See United States v. Robinson*, 414 U.S. 218, 235 (1973) ("[W]e hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.").

Based on the evidence presented, taken in the light most favorable to Palmer, Allen's search, seizure, and arrest of Palmer was not unreasonable. Therefore, the Court dismisses Palmer's Fourth Amendment claim for unlawful search and seizure against Allen. The Court also dismisses Palmer's Fourth Amendment claim for unlawful search and seizure against Trevino, as Palmer has not alleged any facts that indicate that Trevino ever searched or seized him. Accordingly, the Court dismisses Count III in its entirety.

### 4. Count IV: Failure to Intervene

Next, in his fourth claim, Palmer alleges that Defendant Officers stood by and failed to intervene during the violation of his constitutional rights, even though they had the opportunity to do so. Dkt. No. 53, pp. 14–15 (Pg. ID No. 285–86). Defendants argue that Count IV must be dismissed as to Allen and Trevino because Palmer did not allege that either was present while the other violated his rights. Dkt. No. 73, p. 27 (Pg. ID No. 552).

The Court finds Defendants' argument to be meritorious. To hold an officer liable for failure to intervene, a plaintiff must show that "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Palmer has satisfied neither prong.

In his Complaint, the instances where Allen allegedly violated his rights occurred outside of the presence of Trevino, at the traffic stop with Officer Barkman, who was not named as a defendant. During Palmer's alleged altercation with Trevino, he does not name any officer that was present and had the opportunity to intervene. Accordingly, the Court dismisses Palmer's failure to intervene claim in its entirety.

### 5. Count V: Destruction of Evidence

In his fifth claim, Palmer seeks to hold all Defendants liable for suppression and/or destruction of evidence, including his cellphone video and the jail surveillance cameras. Dkt. No. 53, pp. 15–17 (Pg. ID No. 286–88). Defendants argue this claim must be dismissed because Palmer's cellphone was returned and contained the video; there is no evidence that Trevino or Allen ever possessed the jail video or caused it to be destroyed; and Palmer can obtain evidence comparable to the jail video through the testimony of Quentez McKinney and Michael Crumbly. Dkt. No. 73, pp. 28–29 (Pg. ID No. 554–55).

As an initial matter, the portion of Palmer's allegations addressing the cellphone video must be dismissed, as he has conceded that Defendants returned the cellphone to him, including the video, as of November 2015. *See* Dkt. No. 73-3, pp. 30–32 (Pg. ID No. 600–02) (including allegations by Palmer that the video was altered because it seemed "fuzzy and distorted," although he could not identify

any parts of the video that were removed). Furthermore, the criminal allegations against Palmer were dismissed when the video was not produced to the district court. *See United States v. Gaskin*, 587 F. App'x 290, 295 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 1579 (2015) (finding a failure to preserve a video of a traffic stop was not prejudicial because there was no reasonable probability that a hearing result would be different had the tape been produced). It cannot be said that Palmer was denied a fair criminal trial where no trial actually occurred. See *Gannett Co. v. DePasquale*, 443 U.S. 368, 394 (1979) (Burger, J., concurring) (noting, by definition, that a pretrial hearing is not a trial). Additionally, having viewed Palmer's cellphone video, it does not appear that there was any "materially exculpatory" evidence on it. The video shows that at least some of Palmer's excessive force allegations were false, and that there was no dispute regarding the presence of open alcohol in the vehicle. *See* Dkt. No. 73-4. Accordingly, the video demonstrated that there was probable cause to arrest Palmer and that no force was used against him while the video recorded. *See id.*

Accordingly, the Court will analyze Palmer's destruction of evidence claim specifically with regard to the Ecorse jail surveillance video, which Defendants argue is unavailable due to a "catastrophic failure of its recording system in early 2013." Dkt. No. 73, p. 29 (Pg. ID No. 555).

## A. Duty to Preserve Material Exculpatory Evidence

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that a prosecutor's suppression of evidence favorable to the accused violates due process where the evidence is material and exculpatory. The Sixth Circuit extended that protection further, holding that "the constitutional principles recognized in *Brady* apply just as equally to similar conduct on the part of police, and thus support our recognizing that the police can commit a constitutional deprivation analogous to that recognized in Brady by withholding or suppressing exculpatory material." *Moldowan v. City of Warren*, 578 F.3d 351, 378–79 (6th Cir. 2009).

"Unlike the destruction or concealment of merely 'potentially useful' evidence, the loss of 'materially exculpatory' evidence directly threatens the fundamental fairness of a criminal trial, and thus undoubtedly implicates the Due Process Clause." *Id*. at 385. *Brady* defined "material exculpatory" evidence as evidence "favorable to an accused . . . [and] material either to guilt or to punishment." 373 U.S. at 87. In "that class of cases where the interests of justice most clearly require it," there is a higher burden imposed on state actors. *Arizona v. Youngblood*, 488 U.S. 51, 61–62 (1988). Additionally, material exculpatory evidence must "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984). "Under *Trombetta*, . . . all that matters is that

-28-

some reasonable alternative means exists for attempting to do what one would have attempted to do with the destroyed evidence." *Elmore v. Foltz*, 768 F.2d 773, 778 (6th Cir. 1985).

Conversely, where a state actor failed to preserve "potentially useful evidence" does not constitute a denial of due process of law unless a criminal defendant can show bad faith on the part of a state actor. *Youngblood*, 488 U.S. at 58. Even gross negligence by the state actor is insufficient to rise to the level of bath faith required to find a constitutional violation for the destruction of potentially useful evidence. *United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001).

### B. Claim Against Defendant Officers

Although Palmer has not presented any evidence that Allen or Trevino were ever in possession of the jail surveillance video, or had means to control the video, that is not the only reason that his destruction of evidence claim fails as to Defendant Officers. Palmer's own allegations and testimony confirm that he has the ability to obtain comparable evidence through other means, namely the testimony of Quentez McKinney and Michael Crumbly, who he alleges witnesses the events in the jail. Dkt. No. 53, p. 8 (Pg. ID No. 279); *see, e.g.*, *United States v. Gaither*, 65 F. App'x 514, 517 (6th Cir. 2003) (noting that the defendant's testimony at trial and presentation to the jury of his contention that the missing

audiotape contained exculpatory evidence, and cross-examination of the government's witnesses of this contention, was "comparable evidence by other means).

Accordingly, the Court will dismiss Palmer's destruction of evidence claim as to Allen and Trevino.

### C. Claim Against the City of Ecorse

Palmer seeks to hold the City of Ecorse liable for suppression and/or destruction of evidence through "the conduct of its employees and/or agents and/or representatives falling within this Count" "[t]hrough the doctrine of *respondeat superior*[.]" Dkt. No. 53, p. 16 (Pg. ID No. 287). The Court finds the presence of this argument concerning. As Palmer's counsel is well aware from his work in other cases, "[i]t is well-settled that a municipality cannot be held liable under 42 U.S.C. § 1983 based on a theory of *respondeat superior*." *Freeman v. City of Detroit*, No. 09-CV-13184, 2011 WL 1869434, at *3 (E.D. Mich. May 16, 2011) (dismissing the plaintiff's section 1983 claim and *respondeat superior* claims against the City of Detroit with prejudice where Palmer's counsel represented the plaintiff). Plaintiff's counsel is reminded of his obligations under Federal Rule of Civil Procedure 11(b), that he must perform a reasonable inquiry into whether the claims within his pleading "are warranted by existing law or by a nonfrivolous

argument for extending, modifying, or reversing existing law or for establishing new law."

Additionally, Palmer asserts in the Amended Complaint that "Defendant City of Ecorse is liable because the violation of [Palmer's] rights described more fully in this complaint were caused by the policies, practices, customs, and/or decisions and/or indecisions of policymakers for the Defendants." Dkt. No. 53, p. 16 (Pg. ID No. 287). At no point in the Amended Complaint or in any of the evidence submitted pursuant to this Motion does Palmer flesh out those "policies, practices, customs, and/or decisions and/or indecisions" in further detail. Palmer never identifies an official with decision-making authority in his Amended Complaint, or in his deposition. Even after discovery, Palmer never cites to another incident where evidence was destroyed—let alone a clear and persistent pattern— or even mentions a scintilla of evidence that would establish that this was anything more than an isolated incident of equipment failure. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005) ("the plaintiff bears a heavy burden in proving municipal liability, and he cannot rely solely on a single instance to infer a policy of deliberate indifference" to constitutional violations).

Thus, the Court will dismiss Palmer's destruction of evidence claim as to the City of Ecorse, as well as to the Defendant Officers.

-31-

### 6.  Count VI: Malicious Prosecution

Next, in his sixth claim, Palmer alleges that "Defendant Officers accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause and they made statements to prosecutors with the intent of exerting influence and to institute and continue judicial proceedings." Dkt. No. 53, pp. 17–18 (Pg. ID No. 288–89). Defendants argue that Count VI must be dismissed because there was probable cause to arrest and charge Palmer, therefore Palmer cannot satisfy essential elements of this claim. Dkt. No. 73, pp. 29–31 (Pg. ID No. 555–57).

To succeed on a claim for malicious prosecution, a plaintiff must show the following three elements: "(1) a criminal prosecution instituted against plaintiff by defendant, terminating in plaintiff's favor, (2) absence of probable cause for the criminal proceeding, and (3) malice or a primary purpose in bringing the action other than bringing the offender to justice." *Rivers v. Ex-Cell-O Corp.*, 100 Mich. App. 824, 832, 300 N.W.2d 420, 424 (1980).

Palmer's claim is premised on lack of probable cause. Palmer was arraigned in 25th District Court in Ecorse for three charges: open intoxicants in a motor vehicle, misdemeanor possession of marijuana, and resisting and obstruction. Dkt. No. 53, p. 11 (Pg. ID No. 282). All criminal charges were dismissed on October 3, 2012 after police did not produce Palmer's cellphone. *Id*. There are no allegations

that the district court made this determination based on a finding that the officers lacked probable cause to arrest Palmer.

"Where the facts are undisputed, the determination whether probable cause exists is a question of law for the court to decide." *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18, 672 N.W.2d 351, 362 (2003). Here, there are undisputed facts that there was an open container of alcohol in the vehicle next to Palmer. That alone, excluding the additional allegations that Palmer was not wearing his seatbelt, was enough for an officer to have probable cause to arrest him, as discussed in a previous section. Furthermore, once officers were able to obtain Palmer's identification—information he previously refused to provide—there is undisputed evidence that there were four outstanding warrants for Palmer's arrest. Accordingly, the criminal proceeding instituted against Palmer by Allen was not entirely lacking in probable cause, and thus Palmer cannot sustain a claim against Allen for malicious prosecution.

As in his other claims, Palmer named both Defendant Officers in this count. However, Palmer failed to allege any facts or provide evidence that would give rise for a claim of malicious prosecution against Trevino. Accordingly, the Court dismisses Palmer's malicious prosecution claim in its entirety.

### 7.  Count VII: Intentional Infliction of Emotional Distress

In his seventh claim, Palmer alleges that "the acts and/or omissions and/or conduct of the Defendant Officers . . . were extreme and outrageous." Dkt. No. 53, pp. 18–19 (Pg. ID No. 289–90). Defendants argue that Count VII must be dismissed as to Allen because Palmer cannot demonstrate a prima facie case of intentional infliction of emotional distress as to Allen. Dkt. No. 73, p. 31 (Pg. ID No. 557).

In Michigan, to establish a claim of intentional infliction of emotional distress, "a plaintiff must show (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Teadt v. Lutheran Church Missouri Synod*, 237 Mich. App. 567, 582, 603 N.W.2d 816, 823 (1999). "Liability for such a claim has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. at 582, 603 N.W.2d 823–24. "It has been said that the case is generally one in which the recitation of facts to an average member of the community would arouse resentment against the actor, and lead the average member of the community to exclaim 'Outrageous!' " *Id*., 603 N.W.2d 824.

This is a demanding standard. *Graham v. Ford*, 237 Mich. App. 670, 674, 604 N.W.2d 713, 716 (1999). "It is not enough that the defendant has acted with an

-34-

intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Id*. The trial court generally determines whether alleged conduct meets this standard, but the question is for the jury where reasonable minds may differ. *Garretson v. City of Madison Heights*, 407 F.3d 789, 799 (6th Cir. 2005).

"Whether a defendant's acts were sufficiently outrageous depends upon the context in which the defendant committed them." *Bhama v. Bhama*, 169 Mich. App. 73, 80, 425 N.W.2d 733 (1988). The extreme and outrageous character of a defendant's conduct may arise when the defendant abuses a relationship that puts him in a position of actual or apparent authority over plaintiff or gives the defendant power to affect plaintiff's interests. *Warren v. June's Mobile Home Vill. & Sales, Inc.*, 66 Mich. App. 386, 391, 239 N.W.2d 380, 383 (1976).

The Court finds that a reasonable jury would be unable to conclude that Allen's alleged choking of Palmer was sufficiently outrageous to sustain a claim for intentional infliction of emotional distress. *Compare Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 619–20 (6th Cir. 2014) (breaking down plaintiffs' door, blindly deploying Tasers, shouting racial epithets, beating individual, and threatening elderly couple with physical violence was sufficiently outrageous); *with Turner v. Viviano*, No. 04-CV-70509-DT, 2005 WL 1678895, at *14 (E.D.

Mich. July 15, 2005) (finding allegations that officers simultaneously choked and struck plaintiff, and used at least one racial epithet to be insufficiently outrageous).

Accordingly, the Court will dismiss Palmer's intentional infliction of emotional distress claim as to Allen only.

### 8.  Count VIII: Federal Civil Conspiracy

Next, in his eighth claim, Palmer alleges that Defendant Officers engaged in a federal civil conspiracy, "by concerted action and/or inaction and/or omission to act, sought to make false allegation and/or misrepresentations to and against [Palmer], immediately resulting in and/or was a proximate cause of the illegal arrest and/or illegal search and seizure of his person and/or property and/or destruction of property and/or loss and/or destruction of evidence and/or false imprisonment and/or malicious prosecution and/or assault and battery and/or excessive force of [Palmer] on or about August 11, 2012." Dkt. No. 53, pp. 19–20 (Pg. ID No. 290–91). Defendants assert that this claim must be dismissed because Palmer has not provided any evidence to support an alleged conspiracy. Dkt. No. 73, pp. 32–33 (Pg. ID No. 558–59).

"A civil conspiracy is 'an agreement between two or more persons to injure another by unlawful action.' " *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) (quoting *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000)). Palmer must show (1) "that there was a single plan"; (2) "that the alleged coconspirator shared in the

general conspiratorial objective"; and (3) "that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985). "Claims of conspiracy must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Farhat*, 370 F.3d at 599 (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

Defendants argue that they are entitled to summary judgment on both Palmer's federal and state conspiracy claims because of a lack of evidence. In his deposition, the only evidence that Palmer offered of conspiracy, aside from the alleged actions and statements by Allen and Trevino, was that "[n]o detective ever came back and called [Palmer] or asked [him] questions about [the incidents about which he submitted complaints.]" Dkt. No. 73-3, p. 29 (Pg. ID No. 599).

The only interaction Palmer alleges between Allen and Trevino occurred after both instances of alleged force. *See* Dkt. No. 73-3, p. 25 (Pg. ID No. 595). Palmer claims that two men were talking and Allen stated "I'm glad you beat [Palmer's] ass" and "what I said the other day must have got around." *Id.* (failing to identify what Allen allegedly said that "got around"). There are no allegations that the two men used force together, or that they talked, met, or otherwise communicated to form a single plan between Allen's alleged use of force and Trevino's alleged use of force. *See, e.g.*, *Johnson v. City of Ecorse*, 137 F. Supp.

2d 886, 893-94 (E.D. Mich. 2001) (denying summary judgment on a civil conspiracy claim where the defendant officers were alleged to have used excessive force together, simultaneously, in their arrest of the plaintiff for driving on a suspended license).

Thus, based on all the evidence presented, it is clear that Palmer's federal civil conspiracy claim lacks the degree of specificity and support of material facts necessary to state such a claim under § 1983 at the summary judgment stage. *See Gutierrez v. Lynch,* 826 F.2d 1534, 1538 (6th Cir. 1987); *Dunn v. Sch. Dist. of the City of Detroit*, No. 07-11950, 2008 WL 4279363, at *5 (E.D. Mich. Sept. 16, 2008) (denying summary judgment on a civil conspiracy claim where the plaintiff's pleadings and deposition testimony went "beyond generalized allegations of a conspiracy to identify a specific intent to use excessive force . . . and to fabricate a cover-up story in support of a criminal complaint").

Accordingly, the Court dismisses Palmer's federal civil conspiracy claim as to Allen and Trevino.

### 9.  Count IX: State Civil Conspiracy

In his ninth claim, Palmer alleges that Defendant Officers engaged in a civil conspiracy under state law by "committ[ing] overt acts and . . . willful[ly] participat[ing] in joint activity including but not limited to illegal arrest and/or illegal search and seizure of his person and/or property and/or destruction of

-38-

property and/or loss and/or destruction of evidence and/or false imprisonment and/or malicious prosecution and/or assault and battery and/or excessive force of [Palmer] on or about August 11, 2012." Dkt. No. 53, pp. 20–21 (Pg. ID No. 291–92). As in their argument to dismiss Palmer's federal civil conspiracy claim, Defendant Officers argue that this claim must be dismissed because Palmer has not provided any evidence to support an alleged conspiracy. Dkt. No. 73, pp. 32–33 (Pg. ID No. 558–59).

"Under Michigan Law, a civil conspiracy consists of (1) a concerted action, (2) by a combination of two or more persons, (3) to accomplish an unlawful purpose, (4) or to accomplish a lawful purpose by unlawful means." *Keyes v. Deutsche Bank Nat. Trust Co.*, 921 F. Supp. 2d 749, 763 (E.D. Mich. 2013). Again, conspiracy claims must be pled with some degree of specificity. *See Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009). Vague and conclusory allegations unsupported by material facts will not suffice. *Id.*

Palmer's Amended Complaint contains nothing more than just these kinds of "vague and conclusory allegations." Indeed, Palmer has pleaded no specific facts to support a finding that Allen and Trevino communicated prior to the separate instances of alleged assault, or that they conspired together to assault Palmer. Therefore, Palmer's state conspiracy claim with respect to Allen and Trevino lacks

the requisite material facts and specificity required and it therefore fails to state a cognizable claim at the summary judgment stage.

The Court dismisses Palmer's state civil conspiracy claim as to Allen and Trevino.

### 10. Count X: Gross Negligence

Next, in his tenth count, Palmer states a claim against Defendant Officers for gross negligence. Dkt. No. 53, pp. 21–23 (Pg. ID No. 292–94). The Amended Complaint lists the following allegations in support of the gross negligence claim: "[u]sing unreasonable, unnecessary force"; "[b]rutally assaulting and battering" Palmer; "Allen's act of grabbing [Palmer] by his neck and squeezing so tightly that he had difficulty breathing ; "Trevino's use of the department issued TASER repeatedly"; "[f]alsely arresting and imprisoning" Palmer; and "[t]aking [Palmer's] cell phone and precluding him from recording public agents and/or officials and/or representatives while on-duty[.]" *Id*. at 22. Defendants argue that this claim must be dismissed because it is supported solely by Palmer's intentional tort allegations. Dkt. No. 73, pp. 33–34 (Pg. ID No. 559–60).

Michigan's Governmental Immunity Act, Mich. Comp. Laws § 691.1407, provides that "a governmental employee is not liable in tort for personal injuries so long as the employee's 'conduct does not amount to gross negligence that is the proximate cause of the injury or damage.' " *Oliver v. Smith*, 269 Mich. App. 560,

715 N.W.2d 314, 317 (2006) (quoting MICH. COMP. LAWS § 691.1407(2)(c).

Under Michigan law, a police officer may be held liable in tort only if "the officer

has utilized wanton or malicious conduct or demonstrated a reckless indifference to

the common dictates of humanity." *Bennett v. Krakowski*, 671 F.3d 553, 560 (6th

Cir. 2011) (internal quotation marks omitted). Further, tort liability will not lie

unless the officer's conduct "is the proximate cause of the injury or damage."

*Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007) (internal

quotation marks omitted). "[T]he Michigan Supreme Court [has] defined 'the

proximate cause' under § 691.1407(2)(c) to mean 'the one most immediate,

efficient, and direct cause preceding an injury.' " *Id.* (quoting *Robinson v. City of

Detroit*, 462 Mich. 439, 613 N.W.2d 307, 317 (2000)).

Michigan law "reject[s] attempts to transform claims involving elements of

intentional torts into claims of gross negligence." *See VanVorous v. Burmeister*,

687 N.W.2d 132, 143 (Mich. Ct. App. 2004), *overruled in part on other grounds

by Odom v. Wayne Co.*, 482 Mich. 459, 760 N.W.2d 217 (2008). Therefore, "if a

claim of gross negligence is premised on [an] alleged assault of plaintiff,"

summary disposition of the gross negligence claim is appropriate. *Norris v. Police

Officers*, 808 N.W.2d 578, 584 (Mich. Ct. App. 2011).

Similarly, the Sixth Circuit has clearly held that "gross negligence" is not an

independent cause of action for claims that sound in excessive force:

-41-

In Count I of her amended complaint, plaintiff claims that defendants' alleged use of excessive force constituted gross negligence, which is actionable under MICH. COMP. LAWS § 691.1407. Although establishing that a governmental official's conduct amounted to "gross negligence" is a prerequisite to avoiding that official's statutory governmental immunity, it is not an independent cause of action. The only cause of action available to plaintiff for allegations of this nature would be for assault and battery. *See, e.g., VanVorous v. Burmeister*, 262 Mich. App. 467, 687 N.W.2d 132, 143 (2004) ("Thus, plaintiff's claim of gross negligence is fully premised on her claim of excessive force. As defendants correctly note, this Court has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence. Thus, plaintiff did not state a claim on which relief could be granted.") (citations omitted); *see also Livermore*, 476 F.3d at 408 (rejecting gross-negligence claim against an officer-defendant because it was "undoubtedly premised on the intentional tort of battery" where it was based on a shooting that resulted in death). Therefore, the district court erred in not dismissing plaintiff's state-law gross-negligence claim. As a result, we reverse the district court's decision to deny summary judgment on this claim.

*Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011); *see also Nelson v. Green Oak Twp.*, No. 14-10502, 2016 WL 233100, at *21–22 (E.D. Mich. Jan. 20, 2016) (collecting cases where gross negligence claims were dismissed based on reliance on intentional torts).

Accordingly, if a jury concludes that Allen and Trevino used excessive force against Palmer, "such conduct would be considered intentional" and would give rise not to a claim for gross negligence but to claims for excessive force and assault and battery. *See Jackson v. City of Highland Park*, No. 15-10678, 2015 WL 3409013, at *3 (E.D. Mich. May 27, 2015). Accordingly, the Court dismisses Palmer's gross negligence claim.

-42-

### 11. Count XI: Assault and Battery

In his eleventh claim, Palmer alleges that Defendant Officers are guilty of assault and battery for "willfully and intentionally touch[ing] [Palmer] against his will[.]" Dkt. No. 53, pp. 23–24 (Pg. ID No. 294–95). Defendants assert Allen is entitled to qualified immunity with respect to this claim. Dkt. No. 73, pp. 33–34 (Pg. ID No. 559–60).

"Under Michigan law an assault is 'an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery.' " *Grawey v. Drury,* 567 F.3d 302, 315 (6th Cir. 2009) (quoting *People v. Nickens,* 470 Mich. 622, 685 N.W.2d 657, 661 (2004)). A battery is defined as " 'an unintentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person.' " *Id.*

The Michigan Supreme Court has stated that the proper method for determining whether governmental immunity applies to intentional torts, such as assault and battery, is to apply the test set forth in *Ross v. Consumers Power Co.*, 420 Mich. 567, 363 N.W.2d 641, 647 (1984). *Odom v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217, 228 (2008). "Under the *Ross* test, an employee enjoys a right to immunity if (1) the employee undertook the challenged acts during the course of his employment and was acting, or reasonably believed that he was acting, within the scope of his authority; (2) the employee undertook the

-43-

challenged acts in good faith or without malice; and (3) the acts were discretionary, rather than ministerial, in nature." *Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011) (citing *Odom*, 760 N.W.2d at 228). "Defendants bear the burden of establishing their entitlement to immunity from plaintiff's state-law claims." *Id.*

The only factor disputed in the present case is whether Allen was acting in good faith and without malice when he allegedly assaulted Palmer at the traffic stop. The Ross test differs from qualified immunity under federal law, because it is subjective, rather than objective, in nature. *Odom*, 482 Mich. at 481–82. "It protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *Id*. Thus, Defendants must establish that Allen acted without malice. *Id*. at 475.

Viewing the evidence in a light most favorable to Palmer, it is not impossible for a reasonable jury to find that Allen acted with malice. Here, Palmer alleges that he was not resisting at the time of the alleged choking incident, or engaging in any other conduct that would make choking an action meeting a subjective standard of good faith. *See* Dkt. No. 73-3, p. 12 (Pg. ID No. 582). Accordingly, Allen is not entitled to qualified immunity and the Court will not dismiss Palmer's assault and battery claim as to Allen or Trevino.

### 12. Count XII: Ethnic Intimidation

Next, in his twelfth claim, Palmer brings a state law claim for ethic intimidation, MICH. COMP. LAWS § 750.147b, as to the Defendant Officers. Dkt. No. 53, pp. 24–26 (Pg. ID No. 295–97). Defendants assert that Palmer failed to allege Allen engaged in acts due to racial animus, and thus he must be dismissed from this claim. Dkt. No. 73, pp. 32–33 (Pg. ID No. 558–59).

Michigan law provides a civil cause of action to "a person who suffers injury to his or her person or damage to his or her property as a result of ethnic intimation." MICH. COMP. LAWS § 750.147b(3). Palmer claims that Allen and Trevino "brutalized, intimidated, harassed, battered and assaulted" and "screamed racial ethnic slurs" at Palmer because he is of African American descent. Dkt. No. 53, p. 25 (Pg. ID No. 296). Nevertheless, Palmer has not produced any evidence that Allen uttered racial slurs or otherwise discriminated against him because of his race. All of Palmer's evidence of racial animus focused solely on Trevino.

Because "[t]he statute is satisfied only when there is evidence of an underlying predicate criminal act committed because of racial animosity, *People v. Richards*, 202 Mich. App. 377, 379, 509 N.W.2d 528, 529 (1993), Palmer has not presented sufficient evidence to make a claim of ethnic intimidation against Allen. *See, e.g., Devoe v. Rebant*, No. 05-71863, 2006 WL 334297, at *8 (E.D. Mich. Feb. 13, 2006) (dismissing ethnic intimidation claim where the plaintiff "fail[ed] to

-45-

present any evidence suggesting that defendants' conduct was motivated in any degree by his race); *Owens v. Fraser Pub. Sch.*, No. 94-CV-71872-DT, 1995 WL 871216, at \*12 (E.D. Mich. Oct. 31, 1995) (granting summary judgment where the plaintiff proffered no evidence that the defendant acted with the specific intent to harass plaintiff because of his race); *People v. Stevens*, 230 Mich. App. 502, 506, 584 N.W.2d 369, 371 (1998) (defendant's "use of the word 'nigger,' his reference to the complainant as a 'black bitch,' and his remark that 'you people shouldn't be allowed in here' " provided strong evidence of racist motive).

Thus, the Court will dismiss this claim as to Allen only.

### 13. Count XIII: Abuse of Process

In the thirteenth and final count, Palmer alleges that the Defendant Officers are liable for abuse of process because they provided allegedly false documentation to commence criminal proceedings against Palmer. Dkt. No. 53, pp. 26–28 (Pg. ID No. 26–29). Defendants argue that an abuse of process claim cannot be sustained because all the facts allege that Defendant Officers wrongfully initiated a criminal proceeding, not that they misused the process. Dkt. No. 73, pp. 36–37 (Pg. ID No. 562–63).

In Michigan, "[t]o recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v. Dozorc*, 412

-46-

Mich. 1, 30, 312 N.W.2d 585, 594 (1981). "The gravamen of the misconduct for which the liability stated in this Section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." *Id*. at n.18 (quoting Restatement (Second) of Torts § 682 cmt. a (1977)).

Accordingly, Palmer's abuse-of-process claim against Allen and Trevino fails because the Defendant Officers' alleged conduct is entirely rooted with the initiation of criminal proceedings, not the misuse of the process. *Spear v. Pendill*, 164 Mich. 620, 623, 130 N.W. 343, 344 (1911) (an "action for the abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue."); *see also Garcia v. Thorne*, 520 Fed. App'x. 304, 311 (6th Cir. 2013); *DirecTV, Inc. v. Zink*, 286 F. Supp. 2d 873, 876 (E.D. Mich. 2003).

The Court is unable to find any support that Palmer's claim for abuse of process was "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." FED. R. CIV. P. 11(b). Other Courts have found that an attorney's filing such a claim may be sanctionable conduct. *See Powell v. Squire, Sanders & Dempsey*, 182 F.3d 918 (6th Cir. 1999) (table) (upholding in part imposition of sanctions because abuse of process claim "utterly lacked any basis in law"); *Cruz v. Don Pancho*

-47-

*Mkt., LLC*, No. 1:15-CV-698, 2016 WL 929332, at *6–7 (W.D. Mich. Mar. 8, 2016) (ordering party that filed abuse of process claim to show cause why the pleading did not violate Rule 11(b)).

The Court dismisses Palmer's abuse of process claim.

## V. CONCLUSION

For the reasons stated herein, the Court will **GRANT** in part and **DENY** in part Defendants' Motion for Summary Judgment [73]. The Court will **DISMISS** Count II against the City of Ecorse; Count III against Allen and Trevino; Count IV against Allen and Trevino; Count V against the City of Ecorse, Allen, and Trevino; Count VI against Allen and Trevino; Count VII against Allen; Count VIII against Allen and Trevino; Count IX against Allen and Trevino; Count X against Allen and Trevino; Count XII against Allen; and Count XIII against Allen and Trevino.

According, the remaining counts are Count I (excessive force) against Allen and Trevino; Count VII (intentional infliction of emotional distress) against Trevino; Count XI (assault and battery) against Allen and Trevino; and Count XII (ethnic intimidation) against Trevino.

IT IS SO ORDERED.

Dated: June 21, 2016                    s/Gershwin A. Drain
       Detroit, Michigan                GERSHWIN A. DRAIN
                                        United States District Judge

-48-

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on **June 21, 2016.**

s/Tanya R. Bankston
TANYA R.BANKSTON
Case Manager & Deputy Clerk

-49-